

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 15, 2019

**BY ECF**

Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Anthony Bush*, 17 Cr. 611 (AT)

Dear Judge Torres:

  The defendant in this case, Anthony Bush, is scheduled to be sentenced on October 3, 2019, having pled guilty, pursuant to a plea agreement, to racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d) and narcotics conspiracy, in violation of Title 21, United States Code, Section 846. The Government respectfully submits this letter in advance of the sentencing.

  In the plea agreement, the parties stipulated that the Guidelines range was 70 to 87 months' imprisonment (the "Stipulated Guidelines Range"). In its Presentence Investigation report ("PSR"), dated July 31, 2019, the Probation Department finds a Guidelines Range of 78 to 97 months' imprisonment. For the reasons explained in this letter, the Government believes a sentence within the Stipulated Guidelines Range is sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a).

## BACKGROUND

 **A. Offense Conduct**

  This case involves gang activity in and around the Mill Brook Houses. The Mill Brook Houses are located on a hill, where the hill slopes from uphill in the East to downhill in the West. For over a decade, two local gangs have operated in the vicinity of the Mill Brook Houses. One gang, "MBG" (which stands for "Millbrook Gangstas" or "Money Bitches Guns") is composed primarily of individuals from the uphill section of the Millbrook Houses on Cypress Avenue in the South Bronx, which is colloquially referred to as "Millbrook Up" or "Up the Block." Another gang, "Killbrook," is composed primarily of individuals from the downhill

section of the Mill Brook Houses, which is referred to as "Down the Block" or "Millbrook Down." PSR ¶ 27.

Many MBG members were also members of the YGz, a larger gang engaged in criminal activities throughout New York City. PSR ¶ 31.

Since in or about 2007, the Mill Brook Houses in the NYPD's 40th Precinct in the South Bronx, New York have been the center of a violent feud between MBG and Killbrook. The feud began in 2007, when a member of MBG shot an individual who was from the downhill side of Millbrook. The rivalry escalated in the beginning of 2010, when there were several shootings between MBG and Killbrook members, including a shootout at a baby shower in the community center of the Mill Brook Houses. PSR ¶¶ 33-36. Later in 2010, MBG and Killbrook reached a truce; however, the peace did not last. On April 18, 2011, Killbrook member Gary Davis shot and killed Bolivia Beck, the girlfriend of an MBG member. Numerous shootings then followed that murder.

Bush directly participated in an act of violence as part of his membership in MBG. Specifically, Bush fired shots at a crowd of people in the Polo Grounds housing development. PSR ¶ 80. Bush was also involved in the distribution of at least 28 grams, but less than 112 grams of crack cocaine. PSR ¶ 80.

### B. Relative Culpability

As the Government has previously outlined, of the 14 defendants in this case, the Government views Michael White as the most culpable. White was a leader in both MBG and the YGz and was the shooter in four separate incidents, during which seven people were injured. The Government views Joey Colon as the second most culpable, because he was a "Big Gun" in the YGz and was involved in multiple shootings. However, because Joey Colon is a cooperating witness who has testified in two trials, he is differently situated than Michael White.

The Government views Demetrius Wingo, Anthony Bush, David Oquendo, and Christian Perez as somewhat similar in terms of culpability. These defendants were core MBG members for many years, and they were also members of the YGz.

The Government views Christopher Howard as uniquely situated. He was an MBG member for many years, and although he was aware of his fellow gang members' drug dealing, he

was not personally involved in drug dealing.  Howard was the shooter in an incident in August 2014, during which three people were injured.

The Government also views James Robinson as uniquely situated.  He was an MBG and YG member for many years, but his principal involvement in the gangs centered around drug dealing.  However, Robinson provided guns to the gang.

The Government views Allen Knight, Miguel Calderon, Wesley Monge, Jamese Snipes, and Oscar Briones as similar in terms of culpability.  These defendants were younger members of the YGz and joined the gang much later than many other defendants.  Nonetheless, each of these defendants had involvement with guns or a shooting, as well as drug dealing.

Finally, the Government views Roy Robinson as differently situated, since he was primarily involved in drug trafficking and was not a member of either gang.  However, a firearm was found at his apartment when he was arrested.

### B. The Presentence Investigation Report

On July 31 2019, the Probation Department issued the PSR for Anthony Bush in this case.  The Probation Department calculates a Guidelines Range of 78 to 97 months' imprisonment, based on a higher calculation of defendant's criminal history score.  The Government agrees with Probation's calculation.  The Probation Department recommends a sentence of 78 months.

## ARGUMENT

### A. Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a):  "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

Honorable Analisa Torres
September 15, 2019
Page 4 of 5

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that the district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

B. Discussion

In this case, a sentence within the Stipulated Guidelines Range is appropriate.

First, as detailed above, the crimes committed by Anthony Bush and other MBG members are extremely serious, and wreaked havoc on the Mill Brook Houses and its residents. Bush participated in a shooting as part of his gang activity, where he shot into a crowd of people. Thankfully, no one was hurt, but the shooting could have ended in more tragic circumstances. In addition, Bush's conduct was not limited to shootings: he was a key participant in the narcotics conspiracy, and was responsible for distributing significant quantities of crack cocaine in the Mill Brook Houses. Given the nature and circumstances of these serious crimes, a substantial sentence of incarceration is appropriate.

Second, a substantial sentence is necessary to deter the defendant and to protect the public from Bush.  Bush committed a shooting and then engaged in drug dealing up until his arrest in October 2017.  A Guidelines sentence is necessary to deter Bush and prevent him from resuming his dangerous behavior, until an age when the likelihood of his involvement in such crimes is significantly reduced.

## **CONCLUSION**

For these reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is warranted for Anthony Bush.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     /s/
Jordan Estes
Alexandra Rothman
Assistant United States Attorneys
(212) 637-2543/2580

cc:  Richard Palma, Esq. (via ECF)